63 A.3d 764

IN THE MATTER OF A.N., A MINOR.

Superior Court of New Jersey
Appellate Division

Argued January 9, 2013—Decided April 16, 2013.

Before Judges ASHRAFI, HAYDEN and LISA.

*Jennifer Simons,* Deputy Attorney General, argued the cause for appellant Division of Medical Assistance and Health Services (*Jeffrey S. Chiesa,* Attorney General, attorney; *Melissa H. Raksa,* Assistant Attorney General, of counsel; *Dianna Rosenheim,* Deputy Attorney General, and *Ms. Simons,* on the briefs).

*Sharon Rivenson Mark* argued the cause for respondent A.N. (Law Office of *Sharon Rivenson Mark, P.C.,* attorneys; *Ms. Mark,* on the brief).

*Richard N. Campisano* argued the cause for respondent S.N.

*Valerie A. Powers Smith* argued the cause for respondent E.N. (*Slovak Baron Empey Murphy & Pinkney, LLP,* attorneys; *Ms. Smith,* on the brief).

*Thomas J. Monroe* argued the cause for respondent Bank of America, N.A. (*Meyner and Landis, LLP,* attorneys; *Mr. Monroe,* on the brief).

The opinion of the court was delivered by

LISA, J.A.D. (retired and temporarily assigned on recall).

This appeal requires determination of where the jurisdiction of the Chancery Court ends, in its oversight of trust expenditures under Title 3B, and where the jurisdiction of the Division of Medical Assistance and Health Services (DMAHS or Division) begins in making Medicaid eligibility determinations.

The Division appeals from certain provisions in the January 18, 2011 Chancery Division order approving acquisition by a special needs trust of residential real property for the benefit of the beneficiary, and related matters, and the June 7, 2011 order denying the Division's motion for reconsideration. The substantive order was issued pursuant to the request of the co-trustee,

Bank of America (BOA), for instructions regarding its proposed acquisition of the property and incurring expenses connected with maintenance of the property and expenses for the care of the beneficiary. The court approved acquisition of the property, ratified certain past expenditures, and approved similar anticipated future expenditures. The court determined that the acquisition and expenditures were for the "sole benefit" of the beneficiary and that they "shall not act to deprive [the beneficiary] of any government funds or benefits, including, but not limited to, Medicaid."

No application for Medicaid benefits had ever been made by or on behalf of the beneficiary. DMAHS was served with the pleadings as an interested party. It promptly notified the court and counsel for all parties that it took no position regarding the relief requested, i.e. authorization for acquisition of the property and making the requested expenditures. However, it expressed its position that, although the court could provide guidance on the effect of these transactions on the beneficiary's possible future Medicaid eligibility, the court lacked jurisdiction to address the qualification of an asset for purposes of Medicaid eligibility. Therefore, DMAHS stated that if the beneficiary should ever apply for Medicaid benefits, it did not waive any right to review at that time all transactions and resources, and only it could make a Medicaid eligibility determination.

On appeal, the Division argues that the language in the January 18, 2011 order making prospective Medicaid determinations must be stricken because the Chancery Division lacks subject matter jurisdiction to make such determinations, which, by law, can only be made by the Division. We agree. Accordingly, we reverse and remand for entry of an amended order.

The beneficiary of the trust, A.N., is presently seventeen years old. She suffers from quadriplegic cerebral palsy and is fully dependent on others. Her father is E.N., and her mother is S.N. No application has ever been made on behalf of A.N. for Social Security or Medicaid benefits. Her medical expenses have been

paid by her father's private medical insurance and by funds in the trust.

The trust was created in 2000 pursuant to a Law Division order in Hudson County in litigation in which the beneficiary was plaintiff and received a monetary award, which, in turn, funded the trust. Her parents created the special needs trust pursuant to 42 *U.S.C.A.* § 1396p(d)(4)(A) and 42 *U.S.C.A.* § 1382b(e)(5). Her parents are co-trustees, along with BOA, the corporate co-trustee.

E.N. and S.N. separated in 2006. S.N. remains in the family home in Elmwood Park with her daughter, A.N., as well as A.N.'s maternal grandmother, who assists her in caring for A.N. The home has been renovated to accommodate A.N.'s special needs.

Because of family financial difficulties, the home was threatened with foreclosure, as a result of which, in November 2008, the trust began assuming the mortgage payments and carrying costs. E.N. and S.N. wanted the trust to purchase the home for their daughter's benefit. They also sought to receive compensation from the trust for the care they provided their daughter.

Article THIRD of the trust contains these relevant provisions:

H.   It is intended that this trust will supplement [A.N.]'s needs but only in ways that preserve eligibility for current and future programs of significant value to which she may be entitled and all questions pertaining to the trust shall be resolved accordingly. No payment shall be made (for any purpose, including food, shelter and clothing) on behalf of [A.N.] which will render her ineligible for any such program (or reduce the benefits available), however, if eligibility can be maintained by making a payment on her behalf instead of making the payment directly to her or to her guardian, such payment may be made subject to the limitations of this article. . . .

I.   Subject to the limitations imposed by this Article, the trustee may purchase real estate that would make suitable housing for [A.N.]. The trustee shall pay all expenses and taxes associated with the maintenance of this property, but [A.N.] shall be charged rent on a monthly basis in a reasonable amount to be determined by the trustee in his discretion, and other persons residing in such property shall pay a proportional share of expenses associated with the maintenance of the property.

J.   The trustee may pay one or more family members of [A.N.] a fee to enable such person or persons to provide [A.N.] with care over and above that which a family member would normally provide a non-disabled child of [A.N.]'s age, if such care is necessary because of [A.N.]'s disability, if the trustee determines that it would be more economical to do so rather than to purchase such care from a

professional caregiver, and if the cost of such care does not exceed fair market value.

Article FOURTEENTH contains these relevant provisions:

A. This agreement and any trust created hereunder is intended to meet the requirements for a Special Needs Trust under 42 *U.S.C.A.* § 1396p(d)(4)(A) and 42 *U.S.C.A.* § 1382b(e)(5) and all provisions of this agreement shall be construed so as to achieve this result. The agreement may be conformed, if necessary, with the approval of the Court which authorized the establishment of this trust, for the sole purpose of achieving technical compliance with the aforementioned statutes.

B. Any and all disbursements shall be for the sole benefit of [A.N.].

In January 2010, in accordance with the wishes of A.N.'s parents, BOA filed a verified complaint in the Chancery Division, Probate Part, seeking instructions pertaining to the trust's proposed purchase of the home and approval of prior and future payments related to the maintenance of the home and for A.N.'s care. The complaint also sought instructions regarding rent by occupants of the property and as to the scope of parental support provided to A.N. by her parents. As to each of these items, the complaint also sought instructions regarding the "impact on the Trust beneficiary's Medicaid eligibility."

An order to show cause was issued. The court appointed a guardian ad litem, who filed a report with the court. As we stated, DMAHS responded to the complaint with a letter, dated March 16, 2010. The Division noted that A.N. was not receiving Medicaid benefits and it took no position on the relief requested by BOA. However, it expressed its position that, although the court could provide guidance to the trustee on A.N.'s possible future Medicaid eligibility as a result of the proposed transactions, the court lacked jurisdiction to "make administrative determinations with regard to a person's future Medicaid eligibility or make determinations about the evaluation of transactions under Medicaid rules." The Division concluded that it possesses the sole authority for making such determinations, and it did not waive the right to review all income, resources, trusts for A.N.'s benefit, trust accountings and transfers by or on A.N.'s behalf "as they may affect her eligibility should she apply for Medicaid benefits."

On the return date of the order to show cause, the court conducted a plenary hearing, receiving the testimony of A.N.'s

parents. Various documents were placed in evidence. No representative from DMAHS attended the hearing. After reserving decision, the court issued a comprehensive oral decision on January 12, 2011. In the course of rendering its decision, the court acknowledged the Division's position, referencing its March 16, 2010 letter.

Based upon the evidence received at the hearing, the court found that A.N.'s parents were providing extraordinary care for her beyond routine care, and they could be compensated from the trust for the extraordinary care. Likewise, the court found that the grandmother was providing necessary care, for which she could be compensated from the trust. The court found the purchase of the home to be in A.N.'s best interest and authorized the trust to purchase it. The court also approved the prior mortgage payments by the trust because they were made to preserve the residence for A.N.'s benefit.

The court conducted an analysis of federal and state Medicaid provisions because BOA sought a determination that the subject transactions would not result in a prospective loss or reduction in Medicaid benefits which A.N. might seek in the future. The court concluded that the transactions were for A.N.'s sole benefit, that they would not disqualify the trust from continuing its status as a special needs trust, and that the transactions would not impair A.N.'s ability to receive full Medicaid benefits.

The court then executed the order of January 18, 2011. After setting forth a long list of preambles and factual findings, the court (1) authorized purchase of the home, (2) approved the prior mortgage payments, (3) authorized payment of future taxes, insurance and maintenance costs for the home, and (4) after determining that the care provided by A.N.'s parents and grandmother was extraordinary care, authorized BOA to pay them for it "based on an hourly rate to be determined at the discretion of BOA." [1] At the

[1] The order also required A.N.'s mother and grandmother to pay a pro rata share of rent.

end of each of these provisions, the order stated that the expenditure was

*for the sole benefit of [A.N.] and shall not act to deprive [A.N.] of any government funds or benefits, including, but not limited, to Medicaid....*
[Emphasis added.]

The Deputy Attorney General representing the Division received an unexecuted copy of the proposed order and promptly wrote to the court, with copies to all counsel, objecting to the provisions we have emphasized. She argued that those provisions should be stricken because they "appear to intend to preclude the Medicaid agency from reviewing the trust under Federal and State rules——something that cannot be done in the Chancery Division" because "[e]ligibility is strictly an administrative matter determined based on State and Federal guidelines." She said that "DMAHS will review assets and transfers of [A.N.] made by her representatives as they [a]ffect eligibility." She concluded: "The trustee can be ordered to act in such a way as to not [a]ffect Medicaid eligibility (the trust already likely provides for that), but the order should not attempt to preclude Medicaid from making any independent determination of the effect on eligibility."

When the deputy was informed that the order had already been signed, she filed a formal motion for reconsideration, seeking to amend the order by striking the provisions we have highlighted, as well as similar provisions contained in the preambles and fact findings recited earlier in the order. After hearing oral argument, the court denied the motion, reasoning that acceptance of the Division's position would render the court "without the power to provide instructions in situations such as this."

The court based its subject matter jurisdiction primarily on *N.J.S.A.* 3B:2–2, which provides:

The Superior Court shall have full authority to hear and determine all controversies respecting wills, trusts and estates, and full authority over the accounts of fiduciaries, and also authority over all other matters and things as are submitted to its determination under this title.

The court found further support for jurisdiction in other sections in Title 3B, which we will discuss. Finally, the court found

"instructive" *In re Keri*, 181 *N.J.* 50, 853 *A.*2d 909 (2004), which approved the practice of Medicaid planning by a fiduciary. Relying on *Keri*, the court concluded:

> So the Superior Court has jurisdiction to review and approve Medicaid planning with such planning impacting determining Medicaid eligibility.
>
> This Court finds that it has jurisdiction to direct the disbursements of funds from a Special Needs Trust for the sole benefit of a minor and make the determination that those disbursements shall not act to deprive the minor of Medicaid benefits.
>
> In the *Keri* case the Supreme Court affirmed the jurisdiction of the Superior Court to approve of Medicaid planning which in a vast majority of instances is done to avoid unnecessary state or inheritance tax and to otherwise preserve assets.
>
> So this Court is more than satisfied that when [A.N.] applies for Medicaid benefits she will have to submit an application and once that happens other aspects of Medicaid law may be impacted, but I am well satisfied that this Court has the jurisdiction.

The court found additional jurisdictional support in *N.J.S.A.* 3B:20–7, permitting courts to provide directions concerning the sale or retention of property, when "deem[ed] most advantageous to the trust estate and the interests of persons entitled to share therein." Similarly, the court relied on *N.J.S.A.* 3B:12–59, authorizing courts to direct the guardian of an incapacitated person to purchase a house with funds from the ward's estate "[w]hen it shall appear to the court that it would be advantageous to the incapacitated person." The court also relied on *N.J.S.A.* 3B:12–2, which authorizes courts to direct or ratify trust transactions relating to a minor's financial affairs "if the court determines that the transaction is in the best interests of the minor." Similarly, *N.J.S.A.* 3B:12–1 permits courts to authorize, direct or ratify transactions "necessary or desirable to achieve any security, service, care or protective arrangement meeting the foreseeable needs of [a] minor." None of these sections, however, authorize trial courts to make binding Medicaid eligibility determinations.

Nor does *N.J.S.A.* 3B:2–2, which provides trial courts with full authority to resolve controversies arising out of the administration of trust estates and also contains a catchall provision granting "authority over all other matters and things as are submitted to its determination under this title." Although no party, including DMAHS, objected to the relief sought by BOA, namely, to author-

ize the purchase of the home, ratify and approve past expenses incurred for saving the home from foreclosure and providing extraordinary care for A.N., and approving future expenditures for the extraordinary care, the "controversy" before the court could best be characterized as whether those approvals would be most advantageous to and in the best interests of A.N. and the trust estate. That determination required analysis of matters bearing on preservation of the trust's status as a special needs trust, including the potential impact on Medicaid eligibility. The court properly conducted that analysis.

However, the court went too far in purporting to render a binding and final Medicaid eligibility determination. None of the cited Title 3B sections authorize such a determination. The catchall provision in *N.J.S.A.* 3B:2–2 does not embrace such a determination because Medicaid determinations are governed by Title 30, not Title 3B.

Under Title XIX of the Social Security Act, 42 *U.S.C.A.* §§ 1396 to 1396w–5, the federal government provides financial assistance to the State of New Jersey to provide support for residents lacking sufficient means to pay for necessary medical services. 42 *U.S.C.A.* § 1396–1. The New Jersey Medical Assistance and Health Services Act establishes the statutory framework for the implementation of New Jersey's Medicaid program. *N.J.S.A.* 30:4D–1 to –19.5.

DMAHS is the "single State agency" responsible for administering New Jersey's Medicaid program. *N.J.S.A.* 30:4D–4 and –5; *N.J.A.C.* 10:49–1.1; *see* 42 *U.S.C.A.* § 1396a(a)(5) (requiring participating states to designate a single state agency to administer Medicaid). The Division's Medical Review Team is "direct[ly] responsible" for making disability determinations. *N.J.A.C.* 10:71–3.11(a). *But see N.J.A.C.* 10:71–3.11(c) (providing that where "an individual has been determined disabled for Social Security purposes" the "individual shall be considered automatically eligible"). "[A]ll other factors of eligibility [are] the responsibility of" the County Welfare Agency. *N.J.A.C.* 10:71–3.11(a). The

regulations governing eligibility determinations are set forth at *N.J.A.C.* 10:71–4.1 to –4.11.

Eligibility is determined, in part, by the amount of resources available to the applicant. *N.J.A.C.* 10:71–4.1. In general, trusts are considered resources. *N.J.A.C.* 10:71–4.11. A special needs trust, however, may be excluded as a resource if the trust document satisfies certain requirements. *N.J.A.C.* 10:71–4.11(g)(1).

Therefore, as required by federal and state law, only the designated Medicaid agency is authorized to determine Medicaid eligibility. That determination requires a detailed analysis, to be conducted through the expertise of the agency charged with administration of the complex statutory and regulatory Medicaid provisions. That review involves analysis of resources and expenditures within a five-year look-back period. Indeed, at any future time that an application might be made on A.N.'s behalf, Medicaid statutes and regulations might be different than when the Chancery Court order was entered.

If A.N. applies for Medicaid benefits and receives an adverse ruling, she would have the right of administrative review, including a fair hearing through the Office of Administrative Law. *N.J.A.C.* 10:49–10.3(b); *N.J.A.C.* 10:71–1.6(a)(5). A final agency decision is appealable as of right to this court. *R.* 2:2–3(a)(2). Such an appeal would be based upon the complete record made in the DMAHS administrative proceeding.

We are not persuaded that *Keri* authorized the court to make a Medicaid eligibility determination. In *Keri*, the Supreme Court merely sanctioned the practice of Medicaid planning for fiduciaries under appropriate circumstances. *Supra*, 181 *N.J.* at 63–69, 853 *A.*2d 909. The Court concluded that "[s]o long as the law allows competent persons to engage in Medicaid planning, incompetent persons, through their guardians, should have the same right, subject to the legal constraints laid out herein." *Id.* at 69, 853 *A.*2d 909. Unlike competent persons who manage their own affairs, fiduciaries for incompetent persons can seek court instructions to insulate themselves from liability. *N.J.S.A.* 3B:20–8.

However, in either case, the Medicaid planning may or may not be successful, in whole or in part. That determination cannot be made until some future date when an actual Medicaid eligibility determination is made by the designated agency.

Likewise, we are not persuaded that authority was conferred on the Chancery Division for making the disputed determination by *Rule* 4:95–2 (authorizing an action by fiduciaries seeking instructions and advice) or *N.J.S.A.* 2A:16–55 (a provision in the Declaratory Judgment Act, *N.J.S.A.* 2A:16–50 to –62, authorizing the Chancery Division to resolve questions arising out of the administration of a trust estate). These provisions authorize instructions, advice, and determinations pertaining to the administration of an estate. That administration does not extend to future Medicaid eligibility determinations.

Considering these provisions, as well as those we have referenced in Title 3B, we disagree with the Chancery Court's conclusion that the inability to make Medicaid eligibility determinations would leave courts "without the power to provide instructions in situations such as this." Instructions must be limited to administration. As we have stated, in cases such as this, in which potential Medicaid impact is an appropriate consideration, the court can, based upon all of the information presented and a review of current Medicaid statutes and regulations, provide advice that the proposed transaction is consistent with those statutes and regulations and is unlikely to adversely affect Medicaid eligibility. In doing so, the court can make an informed and authoritative determination that the proposed transaction is most advantageous to the trust estate and in the best interests of the beneficiary. It can then provide appropriate instructions based on that determination. However, just as with a competent person managing his or her own affairs, there is no basis for an advance final and binding Medicaid eligibility determination.

We therefore conclude that all references in the January 18, 2011 order stating that various transactions "shall not deprive [A.N.] of any government funds or benefits, including, but not

limited to, Medicaid," exceeded the court's jurisdiction and must be deleted. In their place, the court may, on notice with the right to be heard to all parties, include qualified language to the effect that, based upon the information presented to the court at the time of the proceeding before it, the transaction in question is not likely to have an adverse impact on A.N.'s entitlement to benefits, including Medicaid.

The court's finding that the approved expenditures are for A.N.'s "sole benefit" is supported by the record. *See Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,* 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974). That finding, however, cannot provide a basis to bind DMAHS at a future time when a complete and comprehensive analysis of all relevant factors is conducted in making a Medicaid eligibility determination. The sole benefit finding here must be limited to the court's determination of the appropriateness of the requested expenditures in the administration of the trust. Thus, the court could determine that the expenditures are consistent with the terms of the trust and advance the best interests of the beneficiary and the trust estate. Viewed thusly, the impact of the sole benefit determination is an appropriate one within the confines of the determinations made pertaining to the administration of the estate, but, like the other provision we have ordered deleted, it can have no binding effect in the future on DMAHS in rendering a Medicaid eligibility determination. The amended order should acknowledge this limitation.

Reversed and remanded for entry of an amended order consistent with this opinion. We do not retain jurisdiction.