**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3898-17T4

C.G.,

      Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES, and ATLANTIC
COUNTY BOARD OF SOCIAL
SERVICES,

      Respondents-Respondents.

_____

Submitted September 9, 2019 – Decided September 16, 2019

Before Judges Fasciale and Moynihan.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

SB2, Inc., attorneys for appellant (Laurie M. Higgins, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Department of Human Services, Division of Medical Assistance and Health Services

(Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

PER CURIAM

C.G. appeals from a March 19, 2018 final agency decision by the Department of Human Services Division of Medical Assistance and Health Services (DMAHS) upholding an initial determination by an administrative law judge (ALJ) denying C.G.'s Medicaid application for failure to provide necessary financial verifications.[1]  DMAHS concluded that the failure to produce that information prevented the county welfare agency (CWA) from completing a required eligibility determination.  We affirm.

In July 2015, C.G.'s daughter-in-law (A.S.G.) filled out C.G.'s application. In March 2017, after it resolved C.G.'s request for a spousal waiver, the CWA processed C.G.'s name using its Asset Verification System (AVS).  That uncovered a discrepancy between who had been the rightful owner of a TD bank account.  A.S.G. submitted information saying C.G.'s son owned it, but the AVS report indicated C.G. was the owner.  The CWA requested bank account statements, beginning in October 2013.

---

[1]  C.G.'s notice of appeal identified the date of the decision as April 3, 2018, but that is the date of the letter forwarding the final agency decision to Future Care Consultants (FCC).

In May 2017, FCC (which became C.G.'s designated representative) responded partially by producing a statement covering only September 2015 to October 2015. That statement conflicted with the one submitted by A.S.G., which showed that C.G.'s name and pension information had been deleted. On the statement that FCC produced, C.G.'s pension income appeared, but that information was missing on the Medicaid application.

In May and June 2017, the CWA renewed its request for the verifications. On July 5, 2017, the CWA notified FCC that it would deny the application unless FCC submitted the verifications within ten days. FCC failed to comply with the deadline, and the CWA denied C.G.'s application on July 27, 2017. In September 2017, C.G. purportedly subpoenaed information. In early December 2017, C.G.'s counsel produced additional documentation to the CWA.

One week later, the ALJ conducted a hearing. The ALJ found that no exceptional circumstances existed warranting the late submission of the requested information. The ALJ concluded, based on the record before the CWA, that C.G. failed to produce the requested information in accordance with N.J.A.C. 10:71-2.2(e) and N.J.A.C. 10:71-3.1(b); that the CWA appropriately processed the application; and that the CWA correctly denied the application. DMAHS then rendered the decision under review.

On appeal, C.G. asserts DMAHS issued an arbitrary decision. C.G. says it failed to access an available Income and Eligibility Verification System (IEVS), which C.G. says would have shown his pension information.[2] C.G. argues that the CWA did not help him obtain the verifications, and that the ALJ erred by refusing to consider the late submission. C.G. requests that we vacate the final decision and remand to the CWA to "re-determine [C.G.'s] eligibility for Medicaid."

We begin by addressing our standard of review and general governing legal principles. This court's review of DMAHS's determination is limited. Barone v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 210 N.J. Super. 276, 285 (App. Div. 1986) (explaining that "we must give due deference to the views and regulations of an administrative agency charged with the responsibility of implementing legislative determinations"); see also Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (stating "[i]t is settled that [a]n administrative agency's interpretation of statutes and

---

[2] We conclude that this contention is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We note briefly that the IEVS system pertains to use by the State in post-eligibility evaluations, not to determine county-level eligibility requirements. 42 U.S.C. § 1320b-7(a)(4)(C); N.J.A.C 10:49-14.4. Nevertheless, the application otherwise remained incomplete.

regulations within its implementing and enforcing responsibility is ordinarily entitled . . . deference") (second alteration in original) (citations and internal quotation marks omitted).

We have previously stated that "[w]here [an] action of an administrative agency is challenged, a presumption of reasonableness attaches to the action of an administrative agency[,] and the party who challenges the validity of that action has the burden of showing that it was arbitrary, unreasonable or capricious." Barone, 210 N.J. Super. at 285 (citation and internal quotation marks omitted). "Delegation of authority to an administrative agency is construed liberally when the agency is concerned with the protection of the health and welfare of the public." Ibid. Thus, our task is limited to deciding

> (1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 339 (App. Div. 2009) (citation omitted).]

The Medicaid program was created when Congress added Title XIX to the Social Security Act, 42 U.S.C. §§ 1396 to 1396w-5, "for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae, 448 U.S. 297, 301 (1980). Participation in the Medicaid program is optional for states, however, "once a State elects to participate, it must comply with the requirements of Title XIX." Ibid. The New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5, authorizes New Jersey's participation in the Medicaid program.

The Commissioner of the New Jersey Department of Human Services has the power to issue regulations dealing with eligibility for medical assistance. N.J.S.A. 30:4D-7. DMAHS is a division of the Department of Human Services that operates the Medicaid program in New Jersey. N.J.S.A. 30:4D-4. The CWA grants or denies applications for Medicaid benefits. N.J.A.C. 10:71-3.15. Pursuant to this regulation, the CWA must determine "income and resource eligibility." N.J.A.C. 10:71-3.15(a). N.J.A.C. 10:71-4.1(b) defines resource to include:

> [A]ny real or personal property which is owned by the applicant (or by those persons whose resources are deemed available to him or her, as described in N.J.A.C. 10:71-4.6) and which could be converted to

cash to be used for his or her support and maintenance. Both liquid and non[-]liquid resources shall be considered in the determination of eligibility, unless such resources are specifically excluded under the provisions of N.J.A.C. 10:71-4.4(b).

The regulation explains that a resource must be "available" to be considered in determining eligibility. N.J.A.C. 10:71-4.1(c). A resource is "available" when: "1. [t]he person has the right, authority or power to liquidate real or personal property or his or her share of it; 2. [it is] deemed available to the applicant ([pursuant to] N.J.A.C. 10:71-4.6 . . . ); or 3. [it arises] from a third-party claim or action" under certain circumstances. Ibid. The value of the resource is "defined as the price that the resource can reasonably be expected to sell for on the open market in the particular geographic area minus any encumbrances (that is, its equity value)." N.J.A.C. 10:71-4.1(d). The regulation explains that "[t]he CWA shall verify the equity value of resources through appropriate and credible sources." N.J.A.C. 10:71-4.1(d)(3). "Resource eligibility is determined as of the first moment of the first day of each month." N.J.A.C. 10:71-4.1(e).

In delineating the responsibilities in the application process, the regulation states that the applicant is required to "[c]omplete, with assistance from the CWA if needed, any forms required by the CWA as a part of the application process." N.J.A.C. 10:71-2.2(e)(1). Moreover, the applicant is expected to

"[a]ssist the CWA in securing evidence that corroborates his or her statements." N.J.A.C. 10:71-2.2(e)(2). "The process of establishing eligibility involves a review of the application for completeness, consistency, and reasonableness." N.J.A.C. 10:71-2.9.

Important to this appeal, the regulation notes that "[e]ligibility must be established in relation to each legal requirement to provide a valid basis for granting or denying medical assistance[,]" and that an applicant's statements regarding eligibility are "evidence." N.J.A.C. 10:71-3.1(a), (b). "Incomplete or questionable statements shall be supplemented and substantiated by corroborative evidence from other pertinent sources, either documentary or non[-]documentary." N.J.A.C. 10:71-3.1(b). Thus, these regulations establish that an applicant must provide sufficient documentation to the agency to allow it to determine eligibility and corroborate the claims of the applicant.

It is undisputed that in his application for Medicaid benefits, C.G. failed to timely disclose required information as to the TD account, such as the ownership of the account and the source of its funding. After the CWA learned that the account may contain income from a pension, it sought further information (N.J.A.C. 10:71-2.2(e) and N.J.A.C. 10:71-3.1(b)) because C.G.'s application omitted it, and pension information was not available through the

AVS system. Notwithstanding any outstanding pension verifications, the application remained incomplete due to outstanding issues pertaining to the ownership of the TD account and the ownership of the funds deposited into the account.

The record does not support C.G.'s argument that the CWA failed to assist him. The CWA's caseworker requested required verifications from A.S.G. and FCC. The caseworker sought that information even though C.G. submitted an incomplete application and despite receiving inconsistent documentation. She corresponded with FCC about the needed information on multiple occasions, explained what the CWA needed, extended deadlines for the production, and otherwise complied with the regulations. At no point did C.G. timely supplement his application to verify the required information.

Finally, there is no legal basis to require the ALJ to determine Medicaid eligibility in the first instance. Although C.G. argues the ALJ should have conducted a de novo review of the record – a record that did not exist before the CWA – we have previously stated:

> [A]s required by federal and state law, only the designated Medicaid agency is authorized to determine Medicaid eligibility. That determination requires a detailed analysis, to be conducted through the expertise of the agency charged with administration of the complex statutory and regulatory Medicaid provisions.

[In re A.N., 430 N.J. Super. 235, 244 (App. Div. 2013) (emphasis added).]

In other words, the Office of Administrative Law does not stand in the place of local county welfare agencies. Rather, local county welfare agencies evaluate Medicaid eligibility. N.J.S.A. 30:4D-7(a); N.J.A.C. 10:71-1.5, 2.2(c). Indeed, it is the obligation of the CWA to "review . . . the application for completeness, consistency, and reasonableness." N.J.A.C. 10:71-2.9. On this record, there is no basis to remand to the CWA, as urged by C.G., especially because he has offered no reason for failing to comply with the obligations imposed by N.J.A.C. 10:71-2.2(e) and N.J.A.C. 10:71-3.1(b).

Applying the governing standards of review and legal principles, we conclude there exists substantial credible evidence in the record to support the findings made by the ALJ and DMAHS, and that the final agency decision was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3898-17T4