**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3985-23

CENTERS AGENCY, LLC and
CENTERS LAB NJ LLC, d/b/a
MEDLABS DIAGNOSTIC,

      Petitioners-Appellants,

v.

STATE OF NEW JERSEY, OFFICE
OF THE STATE COMPTROLLER,
THE MEDICAID FRAUD DIVISION,
and JOSH LICHTBLAU, in his
official capacity,

      Respondents-Respondents.

_____

Submitted February 4, 2025 – Decided June 23, 2025

Before Judges Firko and Augostini.

On appeal from an interlocutory order of the New Jersey Office of the State Comptroller, Medicaid Fraud Division.

Hartmann Doherty Rosa Berman & Bulbulia LLP, Jason C. Cyrulnik (Cyrulnik Fattaruso LLP) of the New York bar, admitted pro hac vice, and Ian M. Dumain (Cyrulnik Fattaruso LLP) of the New York bar,

admitted pro hac vice, attorneys for appellants (Jeremy B. Stein, Kelly A. Zampino, Jason C. Cyrulnik, and Ian M. Dumain, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondents (Sookie Bae-Park, Assistant Attorney General, of counsel; Francis X. Baker, Deputy Attorney General, on the brief).

PER CURIAM

On leave granted, plaintiffs Centers Agency, LLC, and Centers Lab NJ LLC d/b/a MedLabs Diagnostic (the Labs) appeal from an interlocutory agency decision by defendant State of New Jersey, Office of the State Comptroller, Medicaid Fraud Division (MFD) temporarily suspending the Labs from participating in the New Jersey Medical Assistance and Health Services (Medicaid) program. The Labs' suspension was based primarily on concerns arising from a New York Medicaid fraud case involving Labs' owner, Kenneth Rozenberg.

In June 2023, the New York Attorney General filed a 309-page verified complaint against Kenneth Rozenberg and others, "alleging they had misappropriated in excess of $83 million in Medicare and Medicaid funding through four long-term care facilities operated in the State of New York," and neglected and harmed the residents of these nursing facilities. During the same month, the New Jersey Department of Health (DOH) issued a Curtailment of

Admissions Order against a New Jersey nursing facility owned by Kenneth Rozenberg, directing those admissions be curtailed and imposing a corrective action plan.

During this time, Kenneth Rozenberg and Beth Rozenberg owned the Labs. On January 25, 2024, MFD notified the Labs of its intention to suspend the Labs, effective 120 days from the date of the notice, "from further participation in any capacity in the New Jersey Medical Assistance and Health Services" (Medicaid) and other programs administered in whole or in part by the Division of Medical Assistance and Health Services (DMAHS). The reason for the temporary suspension was that Kenneth Rozenberg was a ninety-five percent owner, and Beth Rozenberg was a five percent owner of the Labs. On July 3, 2024, MFD notified the Labs that, effective July 11, 2024, the suspension would take effect.

On July 9, 2024, the Labs notified MFD that the Rozenbergs no longer owned the Labs. The Rozenbergs had executed assignments, relinquishing ownership to Uri Lerner (Lerner), who became the one hundred percent owner of the Labs effective July 8, 2024. MFD, however, declined to rescind the suspension, which took effect on July 11, 2024.

A-3985-23

In reviewing this interlocutory decision, the narrow issue before us is whether MFD's decision to temporarily suspend the Labs' participation from the Medicaid program was arbitrary, capricious or unreasonable and not supported by the substantial credible evidence at this juncture. Based on our review of the record and governing law, we affirm.

I.

A. MFD's Regulatory Authority.

The federal government provides New Jersey "financial assistance" under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 to 1396w-8, to support "residents lacking sufficient means to pay for necessary medical services." In re A.N., 430 N.J. Super. 235, 243 (App. Div. 2013) (citing 42 U.S.C. § 1396-1). The statutory framework governing New Jersey's participation in the federal Medicaid program is through the New Jersey Medical Assistance and Health Services (NJMAHS) Act, N.J.S.A. 30:4D-1 to -19.5. The DMAHS, which administers the Medicaid program, is the agency "responsible for protecting the interests of the New Jersey Medicaid Program and its beneficiaries." E.B. v. Div. of Med. Assistance & Health Servs., 431 N.J. Super. 183, 192 (App. Div. 2013) (citing N.J.A.C. 10:49–11.1(b)). "The State of New Jersey expends more than $9 billion in taxpayer funds to fund the Medicaid program each year" and

"has a continuing responsibility to ensure that funds expended under the Medicaid program are used appropriately and efficiently to promote the public health." N.J.S.A. 30:4D-54(a), (b).

In 2007, the New Jersey Legislature enacted the Medicaid Program Integrity and Protection Act (the Act), N.J.S.A. 30:4D-53 to -64, in part, to address "[f]raud, waste, and abuse by providers and recipients in the Medicaid program . . . ." N.J.S.A. 30:4D-54(c). The Act established the Medicaid Inspector General, and subsequently, the Legislature transferred the responsibilities of detecting, preventing and investigating Medicaid fraud to MFD. See N.J.S.A. 30:4D-54, -57.

The Office of the State Comptroller created MFD "[t]o conduct and supervise all State government activities, except those of the Medicaid Fraud Control Unit in the Department of Law and Public Safety, relating to Medicaid integrity, fraud, and abuse . . . ." N.J.S.A. 30:4D-57(a)(2); see N.J.S.A. 52:15C-23. Under the statute, MFD investigates fraud, waste, and abuse, performs background checks on all Medicaid provider applicants, and coordinates oversight efforts among all State agencies that provide and administer Medicaid services and programs. See N.J.S.A. 30:4D-57.

N.J.S.A. 30:4D-17.1 and N.J.A.C. 10:49-11.1, with the approval of the Director, authorizes MFD to suspend a Medicaid provider "for good cause." Of the enumerated acts set forth in N.J.A.C. 10:49-11.1(d) that may establish good cause for suspension, N.J.A.C. 10:49-11.1(i) provides:

> The Medicaid Agent or DMAHS may suspend a person in the public interest for any cause specified in (d) above, or upon a reasonable suspicion that such cause exists, or when, in the opinion of the Medicaid Agent or DMAHS, such action is necessary to protect the public welfare and the interests of the Medicaid or NJ FamilyCare program.

Reasonable suspicion is

> . . . established by a judgment or order of an administrative agency, or court of competent jurisdiction, or by a judgment of conviction, grand jury indictment, accusation, arrest, or by evidence that such violations of civil or criminal law did in fact occur.

> [N.J.A.C. 10:49-11.1(j)(5).]

B. Labs Ownership.

On January 25, 2024, based on the allegations of Medicaid fraud and abuse in New York and the New Jersey curtailment order, MFD, with the Director's authorization, sent written notification to the Labs that they would be temporarily suspended from the Medicaid program in 120 days. The parties began discussions toward resolving the matter. On June 26, 2024, MFD

6

requested plaintiffs to certify that they had self-suspended and were no longer providing services or submitting claims to the Medicaid program as of June 17, 2024. Plaintiffs did not sign the certification.

On July 3, 2024, MFD issued amended notices of suspension, advising plaintiffs that their suspension would be effective on July 11, 2024. On the same date, plaintiffs, through counsel, informed MFD that Lerner was the prospective buyer of the Labs. However, plaintiffs assured MFD that the "Lab[s] will not be sold without MFD's knowledge/consent, to the extent MFD would like to weigh in on that process." Plaintiffs expressed "[t]he hope [that] the transaction [would] be consummated by mid-July." On July 9, 2024, the Labs advised MFD that effective July 8, 2024, the Labs were under new ownership. As a result, plaintiffs asserted that MFD should rescind the suspension because "the basis for the forthcoming suspensions and terminations" had been eliminated.

Plaintiffs provided copies of documents to demonstrate that the Rozenbergs had assigned their ownership interest to Lerner. In further support of the transfer of ownership, plaintiffs provided a copy of the 2022 Schedule K-1 from the Partnership's Income Tax Return.

However, MFD declined to lift plaintiffs' suspension due to some inconsistencies in those documents that raised concerns regarding the

authenticity of the alleged transfer of ownership. Those inconsistencies included: (1) plaintiffs' Medicaid applications identified the Rozenbergs as sole owners — Kenneth having ninety-five percent ownership and Beth having five percent ownership of Center Agency; (2) the Medicaid applications did not identify Lerner as having ownership interest in the Labs and the allegations contained in the June 28, 2023 New York verified petition; and (3) one of the assignment documents had a handwritten annotation that reduced Kenneth Rozenberg's ownership interest from ninety-five to ninety percent. Moreover, in the New York verified complaint, Lerner is identified as having an 11.25% shared ownership interest with the Rozenbergs in the SeniorCare EMS facility.

On July 18, 2024, after the suspension took effect, MFD advised the provider community that the Labs had been suspended from participation in the Medicaid program as of July 11, 2024. The notice emphasized that the suspension was temporary but advised providers to cease making referrals to the Labs for services and if they failed to comply, they may be subject to a civil enforcement action.

C. <u>Procedural History</u>.

On July 11, 2024, plaintiffs filed a verified complaint and order to show cause in the Chancery Division, seeking to enjoin MFD from imposing the

temporary suspension. On July 26, 2024, the court denied injunctive relief and dismissed plaintiffs' complaint with prejudice. The Labs then sought emergent relief, which we denied on July 30, 2024. Plaintiffs next sought leave to appeal, which we granted on August 19, 2024.

On September 11, 2024, while the present appeal was pending, the Labs requested that MFD provide a statement of reasons for the suspensions and a fair hearing before the Office of Administrative Law (OAL), pursuant to N.J.A.C. 10:49-11.1(k). MFD declined to refer the matter to the OAL given the pending appeal and until the appellate proceedings were resolved.

On February 18, 2025, we granted, without prejudice to the merits panel's right to disregard the supplemental material, MFD's motion to supplement the record with additional claims data documentation. The Labs objected to this application. However, on March 6, 2025, we granted the Labs motion also without prejudice to supplement the record with a certification from the Labs Chief Executive Officer providing clarification regarding the claims data submitted by MFD. MFD asserts that the additional claims data demonstrates that despite the Labs' representations to the contrary, between July 11, 2024, and January 29, 2025, the Labs submitted 26,778 claims for reimbursement to the Medicaid Program. Most of the claims were rejected; however, some claims

totaling $3,587.93 were paid to MedLabs Diagnostic from the Medicaid program.

In response to this additional claims data, the certification from Labs' Chief Executive Officer, Elie Schiff, provided clarification regarding this data. Schiff certified that on June 14, 2024, she verbally instructed the Labs' billing vendor to put all New Jersey Medicaid claims on hold effective June 17, 2024. Schiff further certified that the claims data provided by MFD does not state that the Labs submitted the claims for reimbursement directly to the Medicaid program.

Rather, Schiff asserts that eighty-five percent of the proffered data "reflect submissions that Medicare [not the Labs] made to New Jersey Medicaid in an (unsuccessful) attempt to recover co-insurance from Medicaid on behalf of patients[] whose primary insurance was Medicare." According to Schiff, the remaining fifteen percent were "inadvertently submitted . . . because [the vendor] overlooked and failed to block submissions to certain Medicaid health maintenance organization in implementing" her prior instructions.

On appeal, plaintiffs raise two points for our consideration: (1) the Labs suspension was improper because the factual basis for the suspension was moot; and (2) MFD has no legal basis to bar the Labs from providing free services.

II.

An appellate court's review of an administrative agency determination is both limited and deferential. In re Carter, 191 N.J. 474, 482 (2007); McKnight v. Bd. of Rev., Dep't of Lab., 476 N.J. Super. 154, 162 (App. Div. 2023). "A reviewing court 'must be mindful of, and deferential to, the agency's expertise and superior knowledge of a particular field.'" Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018) (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009)) (internal quotation marks omitted). "Deference to an agency decision is particularly appropriate where interpretation of the [a]gency's own regulation is in issue." I.L. v. N.J. Dep't of Hum. Servs., 389 N.J. Super. 354, 364 (App. Div. 2006).

"[U]nless there is a clear showing that [the agency's decision] is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record," it should be sustained. In re Herrmann, 192 N.J. 19, 27-28 (2007). Under that standard, the scope of appellate review is guided by three major inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the agency's decision is supported by substantial, credible evidence in the record; and (3) whether in applying the law to the facts, the administrative agency "clearly erred" in reaching its conclusion. Allstars, 234 N.J. at 157 (quoting In re Stallworth, 208

N.J. 182, 194 (2011)).  The party challenging the administrative action bears the burden of showing that the agency's decision did not meet that standard.  Lavezzi v. State, 219 N.J. 163, 171 (2014).

However, "an appellate court is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.' " R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (citation omitted).

## A.

The Labs contends that MFD acted beyond its authority and without a factual basis for issuing the suspension.  The Labs argues that there is no question that Lerner is the sole owner of the Labs, and therefore, the basis for the suspension no longer exists.  These assertions are without merit for two reasons: (1) the substantial credible evidence in the record at the time of the suspension supported MFD's decision to issue the temporary suspension; and (2) based upon reasonable suspicion, MFD was well within its authority to issue the temporary suspension to a known affiliate of the Labs.

The undisputed facts in the record demonstrate that two days before the suspension took effect, the Labs advised MFD that they were now under new ownership.  The Labs provided MFD with two assignment of membership

interests documents signed by Kenneth and Beth Rozenberg. However, MFD responded that these documents did not establish an arms-length transfer of ownership. First, the documents purported to transfer the Rozenbergs' interest to Lerner, who already claimed to have a five percent ownership interest in the Labs. Neither DOH nor DMAHS had any documentation supporting the alleged transfer. Instead, the records of these state agencies reflected the Rozenbergs as the sole owners of the Labs.

One of the assignment of interests documents provided contained a handwritten annotation, modifying Kenneth Rozenberg's interest from ninety-five down to ninety percent without explanation. Moreover, the assignment documents did not state the consideration provided for this transfer of ownership. Then, on July 23, 2023, twelve days after the suspension went into effect, the Labs provided MFD with a 2022 Schedule K-1 form, reflecting Lerner's "distributive share of partnership tax items" from the Labs. This document, however, could not have been considered by MFD prior to the effective date of the suspension.

In light of the Labs' representation that it would not be sold without MFD's knowledge and consent, MFD found this unexpected transfer of full ownership only days before the suspension took effect with little supporting documentation

13

questionable. MFD concluded that this documentation was insufficient to avert the suspension from taking effect. We are satisfied that this temporary suspension decision by MFD was grounded in the substantial credible evidence and was not arbitrary, capricious nor unreasonable under these circumstances.

B.

After reviewing the additional evidence before it, MFD decided not to lift the suspension based on the Labs' purported transfer to Lerner. Rather, MFD determined that Lerner was a "known affiliate" of the Labs. The scope of a suspension under N.J.A.C. 10:49-11.1(m) may include "all known affiliates of a person" and such determinations are made on a case-by-case basis. Affiliates are defined as "persons having an overt or covert relationship such that any one of them directly or indirectly controls or has the power to control another." N.J.A.C. 10:49-11.1(c).

Here, the evidence established that the Rozenbergs and Lerner were business associates. In addition to the Labs' assertion that Lerner owned a five percent interest in the Labs before becoming its sole owner, the Rozenbergs and Lerner had a shared ownership interest in a New York business, SeniorCare EMS, which was identified in the New York verified complaint. MFD found

14

this shared business enterprise provided sufficient evidence at this juncture to establish Lerner as a known affiliate of the Labs.

However, the allegations in the New York complaint amplified this concern. According to the complaint, between "2014 through 2020, [r]espondents . . . [including Kenneth Rozenberg], failed to identify interest expenses paid to, and 'Non-Arm's Length Arrangements' with, numerous Related Parties." The complaint further alleged that in 2020, one of the New York nursing facilities "did not list any Related Parties in any section of [its] Cost Report," although the facility made payments to those facilities which included $162,900 paid to "Centers Lab NJ, LLC and $10,572 to SeniorCare EMS." Therefore, the record supports MFD's decision to continue the temporary suspension at this juncture based upon sufficient evidence to suggest that Lerner is a known affiliate of the Labs and until further investigation as to the Labs' ownership and operation is conducted.

On September 11, 2024, the Labs requested a fair hearing in the OAL to contest the suspension in accordance with N.J.A.C. 10:49-11.1(k). MFD did not proceed with this hearing because we had granted leave to appeal and had jurisdiction over the proceedings. See R. 2:9-1(a). As MFD notes, upon resolution of this appeal, the administrative proceedings may proceed, providing

the Labs the opportunity to challenge the temporary suspension and submit additional evidence in support of their position.

Consistent with its statutory obligations, particularly N.J.A.C. 10:49-11.1(i), which permits the suspension of a person upon reasonable suspicion "when, in the opinion of . . . DMAHS [or MFD], such action is necessary to protect the public welfare and the interests of the Medicaid or NJ FamilyCare program," MFD acted within its statutory authority to issue and maintain the suspension pending further investigation into this matter.

C.

The Labs contends that MFD has no legal authority to prohibit it from providing services to Medicaid beneficiaries at no cost in order to maintain its provider relationships pending the resolution of these allegations. MFD objected to the Labs continuing to provide services even without billing for those services. Consistent with its practice, after the suspension was issued, MFD notified the provider community of the Labs' temporary suspension.

Under N.J.A.C. 10:49-11.1(b)(1), entities suspended for any reason "shall not be involved in any activity relating to the New Jersey Medicaid and/or NJ FamilyCare programs." In examining the language of the regulation, the term "any" preceding the word activity, means precisely that and is not limited to only

16

compensated activities. Therefore, the use of the term "any" broadly defines the prohibited activity. Further, this interpretation is consistent with MFD's broad authority and mandate to protect the Medicaid program and its beneficiaries from misuse and fraud and the potential negative effects on patient health. See E.B., 431 N.J. Super. at 192. We are satisfied that MFD's decision to prohibit the Labs from continuing to provide services without billing Medicaid beneficiaries during the time of the temporary suspension was within its statutory authority and was not unreasonable or arbitrary.

In conclusion, we affirm MFD's temporary suspension of the Labs, including the prohibition from continuing to provide services to Medicaid beneficiaries without billing for the services. MFD's temporary suspension is not a final agency decision. The Labs has requested a statement of reasons and a fair hearing in the OAL in accordance with N.J.A.C. 10:49-11.1(k). At this time, the request should be transmitted and the matter returned to the administrative process for a fair hearing to afford the parties the opportunity to present additional evidence and address the Labs' continuing suspension.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

17

A-3985-23